UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ELBERT L. MORGAN,** individually, and on behalf of others similarly situated, | : <br> : <br> : |
| Plaintiffs, | :     CASE NO.: <br> : |
| v. | : <br> : |
| **KEVIN T. KANE,** Chief State's Attorney, Division of Criminal Justice, In His Official and Individual Capacities, <br> **MICHAEL L. REGAN,** State's Attorney for the Judicial District of New London, In His Official and Individual Capacities, **MARY JEAN KANABIS,** Assistant State's Attorney, Judicial District of New London, In Her Individual Capacity, <br> J. SEVERIN BERGERON, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | :     DECEMBER 26, 2014 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PRELIMINARY STATEMENT

1. The law governing a state's obligation to disclose exculpatory evidence to defendants in criminal cases is well established.

2. "The defendant has a right to the disclosure of exculpatory evidence under the due process clauses of both the United States constitution and the Connecticut constitution." *State v. Floyd*, 253 Conn. 700, 736-37 (2000), citing *Brady v. Maryland,* 373 U.S. 83, 86, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

3. "In order to prove a *Brady* violation, the defendant must show: (1) that the prosecution suppressed evidence after a request by the defense; (2) that the evidence was favorable to the defense; and (3) that the evidence was material." *State v. Correa,* 241 Conn. 322, 360–61, 696 A.2d 944 (1997).

4. "It is well established that [i]mpeachment evidence as well as exculpatory evidence falls within *Brady*'s definition of evidence favorable to an accused. *State v. Floyd*, 253 Conn. 700, 737 (2000).

5. In the course of a state court trial scheduling conference and other proceedings held on January 16, 2014, and more than 24 months after Plaintiff Elbert L. Morgan ("Morgan") was arrested, Assistant State's Attorney Mary Jean Kanabis ("ASA Kanabis") informed Morgan's defense counsel that the arresting officer in his case, J. Severin Bergeron ("Bergeron"), resigned as a sworn officer from the Connecticut State Police (CSP) on November 16, 2013, while one or more internal CSP investigations were pending into complaints that Bergeron had committed crimes and violations of CSP policies.

6. ASA Kanabis refused to disclose records to Morgan's defense counsel on "work-product" grounds but did disclose, orally, that if Bergeron was called to testify at a trial scheduled for jury selection on January 17, 2014, he would in probability assert his Fifth Amendment right to remain silent rather than submit to cross-examination.

7. Defendants Kane, Regan, Kanabis, and Bergeron acted under color of state law at all times relevant to the allegations.

## JURISDICTION

8. The district court has jurisdiction in this cause of action under the Fourth and Fourteenth Amendments to the United States Constitution; 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. §§ 1331, 1343(a)(3).

9. The supplemental jurisdiction of the district court is invoked pursuant to 28 U.S.C. § 1367 as to the state law constitutional claims.

## PARTIES

10. Defendant KEVIN T. KANE ("CSA Kane") is the Chief State's Attorney for the State of Connecticut, whose principal place of business is in Rocky Hill (Hartford County), Connecticut.

11. CSA Kane is the "chief of the division of criminal justice." CONN. GEN. STAT. § 51-275. The division is responsible for "prosecut[ing] all crimes and offenses against the laws of the state." CONN. GEN. STAT. § 51-277(b). The Chief State's Attorney may "sign any warrants, informations, [and] applications for grand jury investigations"; may in certain circumstances "appear in court to represent the state" or "represent the state in lieu of a state's attorney for a judicial district"; and "shall participate on behalf of the state in all appellate, post-trial and post-conviction proceedings arising out of the initiation of any criminal action." CONN. GEN. STAT. §§ 51-277(c), (d).

12. Defendant MICHAEL L. REGAN (" SA Regan") is the State's Attorney for the New London Judicial District, Geographical Area Nos. 10 and 21, whose principal place of business is in New London (New London County), Connecticut.

13. Defendant MARY JEAN KANABIS ("ASA Kanabis") is an Assistant State's Attorney at Geographical Area No. 10 in the New London Judicial District.

14. J. SEVERIN BERGERON ("Bergeron") was at all times relevant to the allegations against him a sworn law enforcement officer employed by the Connecticut State Police.

## ALLEGATIONS OF FACT

15. Plaintiff Elbert "Bud" Morgan, Jr. ("Morgan") is a 49 year old tractor mechanic and life-long resident of North Stonington, Connecticut.

A.  The December 26, 2011, On Site Arrest for a December 25, 2011, Alleged Incident

16. J. Severin Bergeron was a CSP trooper assigned to Troop E in Montville, Connecticut, on December 26, 2011.

17. Morgan had never been arrested prior to December 26, 2011.

18. Bergeron graduated from the CSP Academy on November 18, 2010, and was assigned to Troop F in Westbrook prior to his transfer to Troop E.

19. In a December 26, 2011, Arraignment/Probable Cause Affidavit ("PC Affidavit") prepared by Bergeron, submitted to the Superior Court in support of probable cause, and placed in the court clerk's file for use by the judge in finding probable cause at Morgan's December 27, 2011, arraignment , Bergeron reported that Morgan's wife contacted the state police on December 26, 2011, to report an incident that occurred approximately 15 hours earlier at the North Stonington marital home shared by Morgan, his wife, and their 15 year old daughter.

20. Morgan was charged with disorderly conduct and risk of injury to a child based on allegations that he used force against his daughter to restrain her from slapping him, pointed at his wife, and slapped his wife's hand away, forcing her to retreat during a family argument over caring for the home while Morgan's parents were terminally ill.

21. Despite the lapse in time between the incident and the report, Bergeron arrested Morgan without an arrest warrant "[d]ue to the fact that the accused [Morgan] has firearms including heavy machine guns with ammunition" and "for the safety of all parties involved."

22. State law provides only for the seizure of firearms in the course of a domestic violence arrest when a firearm is in plain view or in the possession of the suspect.

> Whenever a peace officer determines that a family violence crime has been committed, such officer may seize any firearm or electronic defense weapon, as defined in section 53a-3, or ammunition at the location where the crime is alleged to have been

4

committed that is in the possession of any person arrested for the commission of such crime or suspected of its commission or that is in plain view. CONN. GEN. STAT. § 46b-38b(a).

23. Morgan was arrested in his vehicle where no firearms were located.

24. No firearm, knife or other dangerous weapon was threatened or used in the December 25, 2011, incident.

25. Morgan has never threatened to use or used his firearms in a threatening manner.

26. Each of the 91 firearms, 8 Upper Receivers, Cross-Bow, and two magazines seized from the basement and gun vault in Morgan's home was legal and properly registered as required with the state and federal governments.

27. Morgan has never been charged nor is there any evidence he could be charged with any offense related to firearms.

28. Morgan had never been the subject of a restraining or protective order and law enforcement had never been called to his home on a complaint about him prior to December 26, 2011.

29. A Family Violence Offense Report prepared by the state police on December 26, 2011, which provides four options for level of injury to a victim, specifically, "Serious Physical Injury," "Minor Physical Injury," "No Physical Injury," and "Fatal," noted that Morgan's wife and daughter received "No Physical Injury." "Physical injury" is defined under state statute as "impairment of physical condition or pain." CONN. GEN. STAT. § 53a-3(3).

B. The State Court Criminal Court Proceedings

30. ASA Kanabis offered Morgan a plea to unlawful restraint, a Class A misdemeanor, with no incarceration, and a period of probation.

5

31. An unlawful restraint conviction would have made Morgan ineligible under federal law to possess any firearm or ammunition for the rest of his life.

32. Morgan appeared for trial on October 30, 2013, prepared to proceed with jury selection having served ASA Kanabis on October 29, 2013, with a formal request for disclosure of, among other things, exculpatory information.

33. ASA Kanabis offered Morgan the option on October 30, 2013, of two diversionary programs, Accelerated Rehabilitation (AR) and Family Violence Education (FVEP), as a means to resolve his case rather than trial.

34. Morgan applied for AR and FVEP on October 30, 2013, and the matter was continued until December 4, 2013, for The Honorable Hillary B. Strackbein ("Judge Strackbein") to consider Morgan's two applications.

35. An article by Karen Florin published on October 31, 2013, in *The Day* newspaper online edition entitled *North Stonington collector agrees to sell guns to resolve domestic charges*, cited and quoted the allegations in the PC Affidavit sworn to by Bergeron and placed in the pubic court clerk's file.

36. Morgan withdrew the AR and FVEP applications on December 4, 2013, representing that the acceptance of the FVEP program in combination with the allegations in the PC Affidavit filed by Bergeron and reported by *The* Day, if unopposed, implied guilt.

37. The court notified Morgan of a January 17, 2014, trial by notice dated January 10, 2014.

38. Morgan appeared on January 16, 2014, for a scheduling conference with the trial judge.

39. Prior to January 16, 2014, ASA Kanabis provided Morgan a witness list which included Bergeron.

40. Subsequent to the January 16, 2014, scheduling meeting with the trial judge, ASA Kanabis asked Morgan's counsel to meet in chambers with Judge Strackbein.

41. ASA Kanabis represented during the meeting with Judge Strackbein that Bergeron had falsified hundreds of reports and resigned from the CSP rather than be terminated or prosecuted.

42. ASA Kanabis referred to a document that appeared to be a fax cover sheet with an attached page which Morgan's counsel requested but was not provided for the stated reason that it was "work-product."

43. Ultimately Morgan accepted a 9 month period of AR, but not the FVEP, and maintained at his AR hearing that he committed absolutely no criminal offense but could not trust the judicial system and therefore would accept AR to maintain with certainty his right to bear arms.

44. Morgan's case was dismissed in October 2014.

45. In finding probable cause on December 27, 2011, to hold Morgan on a $50,000 bond the court relied on an affidavit prepared by a sworn officer who according to ASA Kanabis at the January 16, 2014, chambers meeting with Judge Strackbein would assert his Fifth Amendment right to remain silent rather than be cross-examined on his credibility at trial.

46. Similarly, at the January 2014 AR hearing, ASA Kanabis read into the record an affidavit prepared by a sworn officer who according to ASA Kanabis at the January 16, 2014, chambers meeting with Judge Strackbein would assert his Fifth Amendment right to remain silent rather than be cross-examined on his credibility at trial.

D. Freedom of Information Act Requests to CSA Kane and CSP for *Brady* Disclosure

47. In a letter to CSA Kane dated January 22, 2014, Morgan's counsel requested the following records:

> (1) What policies and procedures does the Division of Criminal Justice follow to track documented issues impacting the credibility of sworn officers on whom criminal prosecutions rely for testimonial and/or tangible evidence?
>
> (2) When did the Division of Criminal Justice learn the date of Bergeron's suspension and resignation?
>
> (3) What steps has the Division of Criminal Justice taken to review all *Arraignment/Probable Cause Affidavits* submitted by Bergeron to the courts, used by the courts to find probable cause to incarcerate individuals pending trial, and placed in court clerk's files for public access?
>
> (4) What steps has the Division of Criminal Justice taken to review all pending cases based on investigations conducted by or assisted by Bergeron, incident reports sworn to by Bergeron, and statements taken by Bergeron?
>
> (5) What steps has the Division of Criminal Justice taken to review all cases ending with convictions based on investigations conducted by or assisted by Bergeron, incident reports sworn to by Bergeron, and statements taken by Bergeron?
>
> (6) Does the Division of Criminal Justice request and/or maintain warrants submitted for the arrest of sworn officers, Internal Affairs investigation reports pertaining to the conduct of sworn officers, and/or any other documentation pertaining to the conduct of officers on whom criminal prosecutions rely for testimonial and/or tangible evidence?
>
> (7) What records does the Division of Criminal Justice have pertaining to Bergeron's credibility and when were they received?
>
> (8) What steps has the Division of Criminal Justice taken to review all affidavits in support of arrest and search warrants which relied on information provided by Bergeron?

48. By letter copied to SA Regan and dated February 11, 2014, CSA Kane responded through Executive Assistant State's Attorney Brian Austin, Jr. as follows:

> 1. The Division does not have any administrative polices or procedures responsive to this request although the Division is currently contemplating the establishment of such policy.
> 2 - 8. These numbered requests pertain to the Division's investigative and/or prosecutorial function and, for the aforementioned reason, the requests are denied.

49. In response to Freedom of Information Act requests submitted to the CSP and complaints filed with the Freedom of Information Commission, Morgan eventually received disclosure of a CSP Internal Affairs Report (No. 12-060) on November 5 and 10, 2013 - too late to withdraw Morgan from the AR program that had already resulted in a dismissal in October 2013.

E.  CSP IA No. 12-060

50. SA Regan and ASA Kanabis failed to disclose the following information about Bergeron during the more than 24 months while Morgan's case was pending and CSA Kane has no policy or procedure to provide guidance for compliance with *Brady v. Maryland* and the duty to disclose exculpatory information as required by the Fourteenth Amendment and the state constitution, as well a General Statutes § 54-86c.

51. CSP Sergeant Gelinas obtained information on or about September 20, 2012, that an unnamed female wanted for failure to appear had posted on Facebook a photograph of herself wearing Bergeron's CSP uniform hat seated in a CSP cruiser.

52. The female is referred to as Jane Doe as the CSP IA records were redacted by reference to the confidentiality provisions of General Statutes § 54-86e prohibiting the disclosure of the identity of sexual assault victims.

53. The photograph and its contents violated section 13.1.1(c)2 of the CSP Administration and Operations (A&O) Manual which prohibits the unauthorized use of a uniform.

54. A formal complaint was filed using CSP Form DPS-678-1 and filed with the CSP Bureau of Professional Standards.

55. Bergeron had previously been located at Jane Doe's residence while on duty when concerns were raised that he was not responding to his radio.

56. Bergeron's supervisor, Sergeant Garcia, had ordered Bergeron to cease contact with Jane Doe on July 28, 2012.

57. Subsequently, on October 5, 2012, Sergeant Nicholson learned from Bergeron that Bergeron had told Jane Doe to avoid selling drugs at a particular location that CSP was investigating for drug activity.

58. A criminal complaint was filed against Bergeron and assigned Case No. C-12-241.

59. Sergeants Mercer and Kaperowski met with SA Regan's investigator Phillip Fazzino ("Fazzino") on November 8, 2012, to discuss charging Bergeron with the criminal offense of hindering a prosecution.

60. SA Regan told Sergeant Mercer to handle the matter internally and that no crime would be charged.

61. Fazzino consulted with State's Attorney Michael Regan and Sergeant Mercer was informed that based on what had been presented on November 8, 2012, the matter should be handled as an internal affairs investigation.

62. Sergeant Mercer did conduct an internal investigation and in a December 11, 2012, interview, Sergeant Murray of the Statewide Narcotics Trafficking Unit (East) stated that Bergeron's disclosure of the information to Jane Doe would have negatively impacted the investigation.

63. During the course of the investigation Sergeant Mercer found that during the time period of March 31, 2012, through September 17, 2012, Bergeron ran the name of Jane Doe through the law enforcement database COLLECT database system 26 times.

64. Further investigation revealed that during that period of time, the CSP system NexGen lists Jane Doe as an involved person eight times but in only one instance would Bergeron have had a job-related purpose to run Jane Doe's name.

65. Sergeant Mercer requested an investigation of Bergeron's use of the COLLLECT database system by the Eastern District Major Crime Squad.

66. The CSP suspended Bergeron on February 14, 2013, and distributed an email notice to all CSP employees.

67. Sergeant Delgrosso opened a criminal investigation on February 15, 2013, into Bergeron's possible criminal use of the COLLLECT database system.

68. Sergeant Delgrosso confirmed earlier reports of Bergeron's criminal use of the COLLECT database system.

69. Sergeant Delgrosso further confirmed Bergeron's access of the COLLECT database system to search for Jane Doe's name on the day of September 16, 2012 at 12:57 A.M. when Bergeron was not on duty.

70. Bergeron lied to Sergeant Mercer during the investigation regarding his use of the COLLECT database but finally admitted that he had never accessed Jane Doe on the COLLECT database system for official reasons when Sergeant Mercer confronted Bergeron with access records and evidence.

71. Bergeron admitted to using the COLLECT database system when asked to do so by Jane Doe and to assist Jane Doe in finding out whether an active warrant or warrants existed for Jane Doe's arrest.

72. Sergeant Mercer's Internal Affairs investigation completed on September 13, 2013, concluded Bergeron had committed the following violations actions:

a. Trooper Bergeron violated Connecticut State Police Administration and Operations Manual section 14.2.2b(1)(a)7 which prohibits an intentional act of deception during any criminal, civil or administrative investigation of proceeding, or on an official department form report or system including (a) lying by either omission or commission; (b) misleading; (c) civil or criminal fraud; and/or (d) perjury. The basis of this finding was Trooper Bergeron answering questions in a misleading manner, lying by omission and by commission while being interviewed by Sergeant Delgrosso of the Eastern District Major Crime Squad in regards to Trooper Bergeron's usage of the COLLECT system database from the dates of March 31, 2012 to September 17, 2012. Trooper Bergeron admitted he did not give Sergeant Delgrosso the entire answer in his interview and changed his story once confronted with facts indicating he had not been truthful.
b. Trooper Bergeron violated Connecticut State Police Administration and Operations Manual section 14.2.2b(1)(a)9 which prohibits using one's position as a member of the Department of Emergency Service and Public Protection for their own benefit of some purpose other than in furtherance of the mission of the agency and the utilization of department information or equipment for personal gain. The basis of this finding was Trooper Bergeron using his position as a State Trooper to access the secure COLLECT database system on numerous occasions for a purpose other than to further the mission of the Department of Emergency Service and Public Protection, particularly his use of the COLLECT system to further his relationship with Jane Doe from the dates of March 31, 2012 to September 17, 2012.
c. Trooper Bergeron violated Connecticut State Police Administration and Operations Manual section 14.2.2b(1)(b)2 which prohibits the misuse of state equipment. The basis of this finding was Trooper Bergeron using his state issued computer to access the State of Connecticut's secure COLLECT database system to further his relationship with Jane Doe from the dates of March 31, 2012 to September 17, 2012. By Trooper Bergeron's own admission, he accessed the COLLECT system twenty six times for other than official purposes, with one of those times when he was not working. Trooper Bergeron further misused his assigned State Police vehicle to transport Jane Doe as an unauthorized passenger on approximately twenty occasions.
d. Trooper Bergeron violated Connecticut State Police Administration and Operations Manual section 14.2.2b(1)(c)4 which prohibits the improper release of information which may be detrimental to any individual, or that would be illegal or would adversely impact any investigation of the department. The basis of this finding was

12

      Trooper Bergeron improperly disclosed an ongoing investigation into illegal narcotics trafficking, specifically the sale of synthetic cannabis (K2) and bath salts occurring in Jewett City. By his own admission, Trooper Bergeron had a conversation with Jane Doe regarding the illegal sale of synthetic cannabis (K2) and bath salts when she disclosed to him she was offered a job transporting the illegal products. In said conversation Trooper Bergeron advised her not to take the job because it was illegal and the State Police were looking into the location she disclosed and its occupants. Due to Trooper Bergeron's disclosure of the investigation, Trooper Chittick and Sergeant Eric Murray of the Statewide Narcotics Task Force-East believed other potential suspects of the task force's investigation were made aware of the investigation and such disclosure had an adverse consequence to investigation efforts.

    e. Trooper Bergeron violated Connecticut State Police Administration and Operations Manual section 14.2.2b(1)(d)1 which restricts passengers in state police vehicles to members of immediate family or household members unless otherwise permitted. The basis of this finding was Trooper Bergeron admitting he had permitted Jane Doe as an unauthorized passenger in his State Police Vehicle on approximately twenty occasions, including one occasion in which he left her unattended in his vehicle enabling her to wear his State Police Hat and take a picture of herself wearing same.

73. SA Regan declined criminal prosecution against Bergeron for criminal misuse of a computer intended for government use only.

74. Bergeron resigned from the CSP in "good standing" effective November 16, 2013.

F.  *Brady* Violations

75.  General Statutes § 54-86c(c) requires each peace officer in the State of Connecticut to disclose in writing to the prosecutorial official in charge of a case any exculpatory information or material which he or she may have with respect to any criminal investigation.

76. SA Regan and ASA Kanabis had actual knowledge of evidence affecting Bergeron's criminal conduct and credibility and willfully, individually, and in coordination with each other, concealed such information from Morgan.

77. Despite having a constitutional and statutory obligation to promptly disclose exculpatory information or material to defendants under General Statutes § 54-86c the Division of Criminal Justice does not have any administrative polices or procedures to track documented

issues impacting the credibility of sworn officers on whom criminal prosecutions rely for testimonial and/or tangible evidence.

**CLAIMS AND VIOLATIONS**

**COUNT ONE**

**Fourteenth Amendment to the United States Constitution**
**42 U.S.C. §1983**
**Connecticut Constitution, Art. 1, § 8**
**Against CSA Kane**

78. Paragraphs 1-77 are incorporated by reference as set forth herein under Count One.

79. At all times herein mentioned, CSA Kane had an obligation to comply with the due process requirements set forth in our state and federal constitutions which require disclosure of exculpatory information and materials.

80. In failing to provide training to prosecutors employed by the Division of Criminal Justice, CSA Kane was and continues to be deliberately indifferent to the due process requirements set forth in our state and federal constitutions which require disclosure of exculpatory information and materials.

81. In failing to provide policies and procedures for prosecutors employed by the Division of Criminal Justice to follow, CSA Kane was and continues to be deliberately indifferent to the due process requirements set forth in our state and federal constitutions which require disclosure of exculpatory information and materials.

82. CSA Kane's unlawful conduct in violating Morgan's right to due process commencing on the date when allegations of Bergeron's criminal conduct in hindering a prosecution were brought to SA Regan's attention on November 8, 2012, and through the next 14 months when both SA Regan and ASA Kanabis failed to disclose Bergeron's on-going misconduct including a February 14, 2013, suspension and November 165, 2013, resignation caused and continues to

cause Morgan to suffer mental and emotional distress, humiliation, embarrassment, anxiety, and pain.

## COUNT TWO

**Fourteenth Amendment to the United States Constitution**
**42 U.S.C. §1983**
**Connecticut Constitution, Art. 1, § 8**
**Against SA Regan and ASA Kanabis**

83. Paragraphs 1-77 are incorporated by reference as set forth herein under Count Two.

84. By failing to disclose and deliberately suppressing exculpatory and impeachment evidence, the SA Regan and ASA Kanabis violated the clearly established due process requirements set forth in our state and federal constitutions which require disclosure of exculpatory information and materials.

85. SA Regan's and ASA Kanabis' unlawful conduct in violating Morgan's right to due process commencing on the date when allegations of Bergeron's criminal conduct in hindering a prosecution were brought to SA Regan's attention on November 8, 2012, and through the next 14 months when both SA Regan and ASA Kanabis failed to disclose Bergeron's on-going misconduct including a February 14, 2013, suspension and November 165, 2013, resignation caused and continues to cause Morgan to suffer mental and emotional distress, humiliation, embarrassment, anxiety, and pain.

## COUNT THREE

**Fourth and Fourteenth Amendment to the United States Constitution
Unlawful Search and Seizure
42 U.S.C. §§ 1983, 1988 and Connecticut Constitution, Art. 1, § 7
Against Bergeron**

86. Paragraphs 1 through 77 are incorporated by reference as set forth herein under Count Three.

87. Bergeron unlawfully seized 91 firearms, 8 Upper Receivers, a Cross-Bow, and two magazines from Morgan's property in North Stonington on December 26, 2014, without a warrant and without statutory authority.

88. The seizure of Morgan's property was unreasonable.

89. Bergeron's unlawful seizure of Morgan's property is the proximate cause of the injury, damages, loss and harm sustained by Morgan.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs have suffered damages and seek:

I.  A DECLARATORY JUDGMENT:

(1) To require the Division of Criminal Justice to establish and maintain a database of all Connecticut peace officers, commonly referred to as a *Brady* list, in compliance with *Brady v. Maryland*;

(2) To require the Division of Criminal Justice to establish procedures, policies and directives so that each prosecutor is aware of any and all issues concerning individual Connecticut peace officer issues of credibility involved in cases being prosecuted by members of said office;

(3) To require the Division of Criminal Justice to establish procedures, policies and directives for each prosecutor to promptly make full disclosure in writing of any and all issues concerning individual Connecticut peace officer issues of credibility involved in cases being prosecuted by members of said office;

II.  AWARD COMPENSATORY AND PUNITIVE DAMAGES;

III.  AWARD REASONABLE ATTORNEY'S FEES AND COSTS; AND

IV.  AWARD OTHER FURTHER RELIEF AS THE COURT DEEMS APPROPRIATE.

PLAINTIFF
ELBERT L. MORGAN


BY: /s/ Rachel M. Baird
Rachel M. Baird (ct12131)
Rachel M. Baird & Associate
8 Church Street, Suite B
Torrington CT 06790-5247
Tel: (860) 626-9991
Fax: (860) 626-9992
Email: rbaird@rachelbairdlaw.com

*His Attorney*

Dated this 26th day of December, 2014 at Torrington, Connecticut.